**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ecila Jones, | No. CV-23-00535-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| C R Bard Incorporated, et al., | |
| Defendants. | |

In this action, Plaintiff Ecila Jones ("Plaintiff") asserts product liability claims against Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Defendants") related to a medical device known as the Recovery Filter, which is an inferior vena cava ("IVC") filter. Now pending before the Court is Defendants' motion to dismiss Plaintiff's complaint on statute-of-limitations grounds. (Doc. 11.) For the following reasons, the motion is granted and this action is terminated.

**BACKGROUND**

I. <u>Relevant Factual Allegations In The Complaint</u>

The facts set forth below, presumed true, are derived from Plaintiff's operative pleading, the complaint. (Doc. 1.)

Defendants are responsible for the design and manufacture of a medical device known as the Recovery Filter, which is an IVC filter. (*Id.* ¶¶ 3-4, 9-15.) The complaint contains extensive allegations concerning the defects in the Recovery Filter and Defendants' knowledge of those defects. (*See, e.g., id.* ¶¶ 29-57.)

In November 2004, a Recovery Filter was implanted in Plaintiff. (*Id.* ¶ 58.)

On March 3, 2020, Plaintiff underwent a CT scan, which showed that her Recovery Filter "had tilted within" her IVC, that "[t]hree of the struts had fractured," that "[o]ne of the broken struts was now embedded in the wall of the IVC," and that "the other two had migrated and were in the right pulmonary arteries." (*Id.* ¶ 59.) From at least this date onward, Plaintiff has experienced pain and suffering and other forms of damages. (*Id.* ¶ 61 ["The fragmented device has caused and will continue to cause Plaintiff pain and suffering, loss of ability to enjoy life, and economic loss."].)

On June 4, 2020, Plaintiff underwent surgery in an attempt to remove her fractured Recovery Filter. (*Id.* ¶ 60.) The procedure was not fully successful. (*Id.* ["Dr. Scott Trerotola attempted to retrieve the Bard Recovery Filter. The procedure took more than twice the normal amount of time expected for retrieval of an IVC filter. Dr. Trerotola was able to retrieve the filter and the three broken legs. However, one of the 'feet' from a strut was retained in the extravascular soft tissue and was unable to be removed."].)

Based on these allegations, the complaint asserts five claims: (1) manufacturing defect; (2) strict liability design defect; (3) negligent design; (4) strict liability information defect; and (5) negligent failure to warn. (*Id.* ¶¶ 66-113.) The complaint also includes a section entitled "Fraudulent Concealment." (*Id.* ¶¶ 114-125.) The relevant factual allegations in that section are that (1) "Defendants marketed the Recovery Filter as being safer and less likely to fracture, migrate, or tilt than other devices, including the Simon Nitinol Filter [yet] concealed that they were aware of information suggesting the Recovery Filter was substantially more likely to fracture, migrate, tilt, or perforate the vena cava and other internal organs and cause injuries, than the other available IVC Filters"; (2) "Defendants were also aware at the time Plaintiff's filter was distributed that electropolishing reduced the risk of fracture and that it was industry standard for Nitinol medical devices [yet] concealed that the Recovery Filter was not electropolished from Plaintiff and her physicians"; (3) "Defendants were also aware that numerous deaths and serious injuries had been confirmed to have been caused by failures of Bard Recovery

filters [yet] concealed this information from Plaintiff and her physicians [and] only warned that people with filters had been reported to die and suffer serious injuries but not that any of these events were confirmed to have been caused by Bard's filters"; (4) "Bard also concealed information that it knew internally there were design issues relating to stability and structural integrity with the Recovery Filter was creating quality problems and device failures once implanted and that Bard was about to introduce a new device that it claimed addressed these problems"; and (5) "Defendants also marketed the filter to the medical community and Plaintiff's health care providers as if the device was safe and effective for the off-label uses for which it was used in this case [yet] concealed from consumers that these were off-label uses that had never been cleared by the FDA." (*Id.* ¶¶ 116-20.) The complaint further alleges that "Plaintiff could not reasonably have discovered the claims made herein until, at the earliest, late 2022 when Plaintiff received notice of this information" and that "[a]ny applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by Bard when they had a duty to disclose those facts." (*Id.* ¶¶ 121, 124.)

II.  Procedural History

On March 30, 2023—that is, more than two years after the unsuccessful removal surgery—Plaintiff initiated this action by filing the complaint. (Doc. 1.)

On June 2, 2023, Defendants filed the pending motion to dismiss. (Doc. 11.)

On June 30, 2023, Plaintiff filed a response. (Doc. 17.) Enclosed as an attachment to the response is a declaration from Plaintiff. (Doc. 17-1.) In relevant part, Plaintiff avows that she was advised by an unnamed doctor in 2018 that she "should get the filter removed" (*id.* ¶ 3); that she "saw a commercial on television about IVC filter litigation" in early 2019, called "the number provided," and spoke to a representative of the Laborde Earles law firm (*id.* ¶¶ 4-5); that she received a series of letters in 2019 and 2020 from that law firm and a related law firm, Fears Nachawati, that led her to believe she "had retained legal representation, [her] interests were being protected, and [she] was pursuing a claim against the manufacturer of my IVC filter" (*id.* ¶¶ 5-9); that when she called Fears Nachawati in

July 2022 "for an update on [her] case," she was "told they were not [her] lawyers," which caused Plaintiff to be "confused" (*id.* ¶ 12); and that "[t]he same day [she] was told this by Fears Nachawati, [she] started calling other lawyers who handled these types of cases" and eventually retained her current counsel (*id.*).

On July 21, 2023, Defendants filed a reply. (Doc. 20.) Neither side requested oral argument.

**LEGAL STANDARD**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

**DISCUSSION**

Defendants argue (Doc. 11 at 5-6), and Plaintiff does not dispute (Doc. 17 at 7-9), that Plaintiff's claims in this action are governed by Arizona's two-year statute of limitations for personal-injury actions. *See* A.R.S. §§ 12-542, 12-551. According to Defendants, this action is untimely in light of that limitations period: "Because Plaintiff's claims accrued by June 4, 2020 [*i.e.*, the date of the unsuccessful removal surgery], she had to file this action by June 4, 2022, to meet Arizona's statutory deadline. But she did not sue until March 20, 2023, more than nine months too late. Plaintiff's claims are therefore

untimely as a matter of law and should be dismissed." (Doc. 11 at 10.)

Plaintiff's only argument in response is that Defendants' "fraudulent concealment tolled [the] statute of limitations." (Doc. 17 at 7, capitalization omitted.) More specifically, Plaintiff argues that "[a]lthough she was implanted with the filter in 2004, she was unaware of its existence until late 2018. Within a few short months of being told of the existence of the filter in her IVC, Plaintiff had contacted an attorney to pursue her claim. Because the information about the Bard Recovery [F]ilter available to the public is misleading, Plaintiff had difficulty finding an attorney who understood that Bard was concealing information about the safety and efficacy of the product and that Plaintiff had a valid claim against Bard." (*Id.* at 9.) Plaintiff concludes: "The Arizona two-year statute of limitations did not begin to run on Plaintiff's claims until she found out she could bring a lawsuit. Because of [Defendants'] fraudulent concealment, *Plaintiff did not know she had a cause of action until July 14, 2022, when her second attorney told her she could bring a lawsuit*. This makes her complaint, filed on March 3, 2023, timely." (*Id.*, emphasis added.)

In reply, Defendants argue that "the 'facts giving rise to the cause of action' are that Plaintiff's filter fractured, tilted in her IVC, and had struts migrate and embed in her IVC— all of which she discovered more than two years before filing this case and, in fact, had a doctor attempt to remove her fractured filter in June 2020. Although Plaintiff spends much of her response reciting the same facts alleged in her complaint about information [Defendants] allegedly concealed, she points to no allegation that [Defendants] concealed 'facts giving rise to the cause of action' such that it prevented Plaintiff from discovering her claims. It would be impossible for [Defendants] to conceal the facts giving rise to Plaintiff's claims because she knew about them before [Defendants] did. In sum, nothing [Defendants] disclosed or allegedly failed to disclose prevented Plaintiff from discovering the alleged filter complications underlying her claims, so fraudulent concealment simply does not apply." (Doc. 20 at 2.) Defendants further contend that "Plaintiff was on notice to investigate whether [Defendants were] at fault for her alleged IVC filter-related injuries when her filter fracture was revealed in a CT scan or, at the latest, when the fractured strut

could not be removed. Because of the then-ongoing MDL that began in 2015 in this district, even the most basic research would have revealed to Plaintiff this flood of litigation and demonstrated that she had a potential claim." (*Id.* at 3-4.) Finally, Defendants argue that although Plaintiff's declaration is not properly before the Court "because it is a matter beyond the pleadings," it undermines her fraudulent-concealment theory because it shows that her claims "arguably accrued in early 2019 when she had knowledge of claims related to her filter and took steps to pursue those claims by consulting an attorney." (*Id.* at 4-5.)

The Court agrees with Defendants on all of these points. Under Arizona law, a cause of action accrues when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 966 (Ariz. 1995). "[I]t is not enough that a plaintiff comprehends a 'what'; there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault. . . . [I]t is ordinarily sufficient when the plaintiff is aware of the injury and its causative agent (the 'what and who' elements) . . . ." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (citations omitted). *See also Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998) ("[T]he plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury."). Meanwhile, "[f]raudulent concealment occurs when a party wrongfully conceals facts giving rise to the cause of action so as to prevent a potential plaintiff from reasonably discovering the claim's existence during the limitation period." *Walk*, 44 P.3d at 999 (cleaned up). "[T]he true inquiry . . . is not whether the defendant has wrongfully concealed the existence of the cause of action itself, but whether the defendant has wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period." *Anson v. American Motors Corp.*, 747 P.2d 581, 587 (Ariz. Ct. App. 1987). Although "when discovery occurs and a cause of action accrues are questions of fact for the jury . . . courts may dismiss a complaint if the running of the statute of limitations is apparent on the face of the complaint." *Physics, Materials*

& *Applied Mathematics Research LLC v. Yeak*, 2021 WL 2557398, *4 (D. Ariz. 2021) (cleaned up). *See also Blackburn v. Summit Healthcare Ass'n*, 829 F. App'x 823, 825-26 (9th Cir. 2020) (affirming the district court's "dismissal on statute of limitations grounds" where "all of Plaintiffs' claims accrued by 2014 because at that point Plaintiffs had knowledge of their injuries sufficient to trigger a duty to investigate").

Here, the factual allegations in the complaint establish that Plaintiff was "aware of the injury and its causative agent (the 'what and who' elements)," *Walk*, 44 P.3d at 996, by March 2020 (when a CT scan revealed that her Recovery Filter had fractured) or at the latest by June 2020 (when the resulting surgery to remove her fractured Recovery Filter was unsuccessful). (Doc. 1 ¶¶ 59, 60.) Indeed, the complaint acknowledges that Plaintiff began sustaining damages—and was aware of those damages—at the time of those developments in 2020: "The fragmented device has caused and will continue to cause Plaintiff pain and suffering, loss of ability to enjoy life, and economic loss." (Doc. 1 ¶ 61.) Although the complaint also alludes to various acts of concealment by Defendants, Plaintiff does not explain (nor can the Court comprehend) how those acts "prevent[ed] [Plaintiff] from reasonably discovering a claim exists within the limitations period." *Anson*, 747 P.3d at 587. *Cf. Thompson v. Pima Cnty.*, 243 P.3d 1024, 1028-29 (Ariz. Ct. App. 2010) ("We recognize that whether a cause of action has accrued is usually and necessarily a question of fact for the jury. Nonetheless, considered in the aggregate, the information the Thompsons possessed before February 1, 2007, constituted a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury and that it was attributable to a particular entity or person. Stated differently, the Thompsons possessed all the facts necessary to support their cause of action: they knew Taylor had been injured in a car accident after she had driven over potholes located on a county-maintained road. Even though the Thompsons did not have an expert's opinion on causation until February 7, 2007, this does not mean they reasonably should not have known the cause of the accident before that time. Simply put, . . . they unquestionably were aware of the necessary facts underlying their cause of action at that time.") (cleaned up).

Turning to Plaintiff's declaration, although there is a strong argument that it is not properly before the Court at this juncture, if anything it underscores why the doctrine of fraudulent concealment is inapplicable here. It shows that Plaintiff had enough awareness of her injuries, and of Defendants' potential responsibility for those injuries, to attempt to retain counsel in 2019 to pursue product-liability litigation against Defendants. It is unfortunate that Plaintiff formed an apparently mistaken belief about whether those attorneys were representing her, which may explain her multi-year delay in bringing this action. Nevertheless, her efforts to retain counsel in 2019 to sue Defendants for the same injuries giving rise to this action are inconsistent with the notion that Defendants' acts of concealment somehow prevented her from reasonably discovering, until 2022, the facts now giving rise to her claims. *Cf. Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir. 1987) (concluding that "the district court correctly held that there was no factual basis for applying equitable modification to the limitations period in this case" where "Stallcop admitted that she consulted three lawyers within the six-month statutory period"); *Rowland v. Prudential Fin., Inc.*, 2007 WL 1893630, *5 (D. Ariz., 2007), *aff'd*, 362 F. App'x 596 (9th Cir. 2010) ("[A] plaintiff may not claim excusable delay or ignorance in an attempt to equitably toll the statute of limitations when she has consulted an attorney within the applicable statute of limitations period."). In a related vein, there is no merit to Plaintiff's contention that her claims did not accrue "until July 14, 2022, when her second attorney told her she could bring a lawsuit." (Doc. 17 at 9.) Courts have correctly rejected this exact theory. *Spencer v. Sommer*, 2002 WL 35649765, *7 (D.N.M. 2002) ("Plaintiff actually attempts to use her consultations with two other attorneys to bolster her argument that her claims did not accrue. . . . These consultations do not favor a finding that Plaintiff did not discover or should not have discovered the facts essential to her cause of action—just the opposite. The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action. Were the rule otherwise, the discovery

rule would postpone accrual in every case until the plaintiff consults an attorney. Plaintiff appears to argue for accrual only when one of the many attorneys she consulted finally wrote an opinion letter specifying a legal cause of action, despite Plaintiff's full knowledge of the relevant facts for many years. That interpretation would distort the discovery rule.") (citation omitted).

Finally, the contents of Plaintiff's declaration also demonstrate why leave to amend—which Plaintiff has not requested—is unwarranted. Although Rule 15(a) "advises the court that 'leave [to amend] shall be freely given when justice so requires,'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted), leave to amend need not be granted if "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Amendment would be futile here in light of Plaintiff's acknowledgement that, by 2020, she had already become aware of her injuries and had already contacted other attorneys in an attempt to sue Defendants for those injuries.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 11) is **granted**. The complaint is dismissed without leave to amend. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 27th day of November, 2023.

Dominic W. Lanza
United States District Judge